UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MITCHELL KALWASINSKI,

                    Plaintiff,

    v.

D. RYAN, et al.,

                    Defendants.

FILED

2007 SP 13  AM 9:04

U.S. DISTRICT COURT
WDECISION AND ORDER
96-CV-6475

## Preliminary Statement

Plaintiff Mitchell Kalwasinski initiated this lawsuit with the filing of a pro se complaint that alleged constitutional violations under 42 U.S.C. § 1983 with regard to his incarceration at Southport Correctional Facility.  In accordance with 28 U.S.C. § 636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this matter, including trial and entry of judgment. (Docket #54).  Currently pending before the Court is defendants' motion to dismiss the complaint as sanctions for plaintiff's making written threats of physical harm towards a defendant and a witness.  (Docket #131).

## Relevant Facts

On March 31, 2003, this Court rendered a decision on the parties' cross-motions for summary judgment, dismissing some of plaintiff's claims.  (Docket #99).  As a result of that decision, two claims remained: (1) plaintiff's excessive use of force claim and (2) a claim of unconstitutional use of physical restraints during plaintiff's exercise periods.  The Court intended on conducting a trial on these claims and on May 9, 2005 appointed

attorney John Annechino, Esq. to represent plaintiff at trial. (Docket #120).    However, because plaintiff filed an appeal as to issues decided in the Court's partial grant of summary judgment, this Court lost jurisdiction while the appeal was pending with the Second Circuit.[1]

On July 26, 2006, Mr. Annechino provided the Court with a portion of a letter he had received from plaintiff concerning a plan to murder two corrections officers involved in this case.   In his letter, Kalwasinski writes that "my associates (civilians) have obtained information on the defendants."   Kalwasinski's letter specifically names the two corrections officers at Southport, provides their Social Security Numbers and states that he also has the officers' home addresses and telephone numbers.   Kalwasinski claims that his "associates" are planning "to murder these defendants and their families."   Concerned, Annechino sent a fax to the Court that attached the relevant portions of the letter. Annechino informed the Court that while he had "strongly discouraged" his client from "such behavior," he thought the threat information should be disclosed to the named "defendants and their families" and sought the advice of the Court.

Given the gravity of the threat, the Court immediately advised defense counsel of Kalwasinski's letter, who in turn notified his clients and the Department of Corrections' Inspector General's (IG) Office.   The following day, Wayne Osborne of the IG's Internal

---

[1] On April 4, 2007, the Second Circuit issued its mandate dismissing plaintiff's interlocutory appeal.

Affairs Division interviewed Kalwasinksi.   In a sworn declaration provided by Osborne, he avers that during the interview Kalwasinski reiterated that his "associates" were going to kill these two corrections officers and their families and that he sent the threats to "shake up" the officers.   See Declaration of Wayne Osborne (Docket #132).   Shortly thereafter, defendants moved to dismiss the complaint as a sanction for plaintiff making death threats against a defendant and a witness in connection with this litigation.

In his pro se opposition to the motion,[2] plaintiff denies making threats against the corrections officers and states that other inmates made the threats.   See Plaintiff's Affidavit at ¶ 16-25 (Docket #137).   According to plaintiff, he "strongly encouraged these inmates not to travel down that road."   Id. at ¶ 24.   Plaintiff claims that the purpose of his letter to Mr. Annechino was to "report these inmates' intentions to cause injury to defendants." Id. at ¶ 21.   Plaintiff denies giving a statement to Wayne Osborne, stating that he "refused to cooperate" or be interviewed by the Inspector General's Office.   Id. at ¶ 5-10.

## Discussion

It is well settled that federal courts have the inherent authority to impose sanctions, including dismissal, for a litigant's bad faith conduct.   This authority is "governed not by rule or

---

[2]   For reasons set forth in the Court's decision dated July 9, 2007, the Court terminated Mr. Annechino's appointment as plaintiff's counsel. (Docket #135).

statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Chambers v. NASCO, Inc., 501 U.S. 32, 42 (1991). See also Diettrich v. Northwest Airlines, Inc., 168 F.3d 961, 964 (7th Cir. 1999)(inherent power permits a court to impose the "ultimate sanction of a grant of judgment"). That said, the sanction of dismissal "'is a drastic remedy that should be imposed only in extreme circumstances,' usually after consideration of alternative, less drastic sanctions." Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 140 (2d Cir. 2007) quoting John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc., 845 F.2d 1172, 1176 (1988). However, there are circumstances where the sanction of dismissal is warranted, because a party's conduct is "due to willfulness, fault, or bad faith." Henry v. Gill Indus., Inc., 983 F.2d 943, 948 (9th Cir. 1993). See also United States v. Shaffer Equipment Co., 11 F.3d 450, 462 (4th Cir. 1993)(when a party "abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process, the court has the inherent power to dismiss the action"). Dismissal is particularly appropriate where the plaintiff's conduct is so egregious that the Court seeks "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643 (1976).

Death threats directed at an opposing party and a witness are

sufficiently serious to warrant the sanction of dismissal.   In
<u>Nelson v. Eaves</u>, 140 F. Supp. 2d 319 (S.D.N.Y. 2001), the
incarcerated <u>pro se</u> plaintiff's complaint alleged civil rights
violations that occurred during his imprisonment.   However, the
court dismissed plaintiff's complaint based on letters he had
written to the defense attorney which the court characterized as
"sexually graphic, threatening in tone, and completely
inappropriate."   In his letters the plaintiff told the defense
attorney "I should kill you, but I won't.   I'm a let you go" and
"Your too bold . . . the brave always dies first."  <u>Id.</u> at 320.   The
court found the plaintiff's letters to be "abusive, demeaning, and
threatening," demonstrating "malice and an intent to harass."  Based
on this finding, the court concluded that the plaintiff was
"prosecuting th[e] case maliciously" and imposed the sanction of
dismissal.  <u>Id.</u> at 322.  <u>See also Frumkin v. Mayo Clinic</u>, 965 F.2d
620, 626-27 (8th Cir. 1992)(where plaintiff made death threats
against defense witnesses, appellate court found the "misconduct was
so serious that, had the district court chosen to dismiss this case,
we would have found it difficult to reverse"); <u>Fidelity Nat. Title</u>
<u>Ins. Co. of New York v. Intercounty Nat. Title</u>, 2002 WL 1433717,
*11-12 (N.D. Ill. July 2, 2002)(where court found threatening letter
was "a direct attempt to influence the outcome of this action" it
ordered dismissal of counterclaims with prejudice).   In the present
case, it is difficult to imagine conduct more offensive to the
administration of justice than a threat to murder a witness or a
defendant.   Whether Kalwaskinski or "his associates" had the ability

to carry the threat out is besides the point.   The record clearly supports a finding that plaintiff intended to intimidate participants in the administration of justice by making threats of lethal physical harm in order to influence the outcome of the litigation.   Such conduct cannot be countenanced under any circumstances.

Plaintiff's explanation for writing the letter is not credible. Kalwaskinski admits to writing and mailing the letter to Annechino, but now claims the content has been misinterpreted.  He claims that his purpose in writing the letter to Annechino was to warn the defendants of a plot hatched by "other inmates" and that he intended to "report" the other inmates and indeed urged them to use the litigation process and not physical force to address their grievances.  However, plaintiff's own letter belies his explanation. Plaintiff clearly allies himself with his co-conspirators, stating that "my associates (civilians) have obtained information on the defendants" and "have told me that they were going to murder these defendants and their families."  Far from trying to distance himself from the actions of his "associates", Kalwaskinski instead links the threats to his excessive force claim that the defendants and their "co-workers" physically abused him.  Moreover, the results of Mr. Osborne's interview with Kalwasinski on July 27, 2006 confirms plaintiff's intentions.  His denials of ever being interviewed by Osborne regarding his letter and his claim that Osborne's declaration is simply in retaliation for his refusal to cooperate are not credible given the other facts.

As stated earlier, dismissal is a severe sanction and should only be imposed in extreme circumstances involving particularly egregious conduct.    I have considered less severe and alternative sanctions, but conclude that the facts here support the harsh remedy of dismissal.   This is not plaintiff's first lawsuit.   Although he is not a lawyer, he is an experienced pro se litigator who is very familiar with the court system and the fundamental requirements of due process and the fair administration of justice.[3] By deliberately and intentionally participating in making threats of physical harm against parties and witnesses in his case, he has engaged in conduct that he should have known would threaten a fair decision in this matter.   Indeed, his misconduct was intended to intimidate others and improperly influence the outcome of his case.   Given this conduct, a sanction more lenient than dismissal is not, in my view, an appropriate response to such a serious offense.   See Lynn v. Roberts, 2006 WL 2850273, *8 (D.Kan. Oct. 4, 2006)(court found that lesser sanctions would be "ineffective at curbing the abusive practices" of the pro se plaintiff).   Because the purpose of the threat was to "shake up" the corrections officers whose testimony at trial would impact the outcome of the case, there is little doubt that plaintiff intentions were to "interfere with the rightful decision of the case."   Anheuser-Busch, Inc. v. Natural Beverage Distributors, 69 F.3d 337, 348 (9th Cir. 1995)(dismissal requires "a

---

[3]    Kalwasinski v. Bernard, 6:94-cv-06043-MAT; Kalwasinski v. Coughlin, et al, 6:94-cv-06123-MAT;   Kalwasinski v. Coombe, et al, 6:95-cv-06343-CJS;   Kalwasinski v. Coombe, et al, 6:95-cv-06525-MAT; Kalwasinski v. Coombe, et al, 6:95-cv-06632-MAT;   Kalwasinski v. Vanderlaan, 6:96-cv-06113-MAT;   Kalwasinski v. Morse, et al, 6:96-cv-06172-JWF.

relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression threatens to interfere with the rightful decision of the case"). While "[t]hreatening letters are harassing, and demonstrate the litigant's use of the judicial system in bad faith," they also "prevent a speedy, open, and just resolution of the dispute on its merits." Fidelity Nat. Title Ins. Co. of New York, 2002 WL 1433717 at *11-12. Accordingly, defendants' motion to dismiss the action as sanctions for plaintiff's conduct is **granted** and the Second Amended Complaint is hereby dismissed with prejudice.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
UNITED STATES MAGISTRATE JUDGE

Dated:   September 12 , 2007
         Rochester, New York